Argued and submitted July 10, ballot title certified as modified July 18, 1985

OREGON STATE HOMEOWNER'S ASSOCIATION,
*Petitioner,*

*v.*

ROBERTS,
*Respondent.*

(SC S31878)

PRIESTLEY,
*Petitioner,*

*v.*

ROBERTS,
*Respondent.*

(SC S31884)

LEAGUE OF WOMEN VOTERS,
INC. et al,
*Petitioners,*

*v.*

ROBERTS,
*Respondent.*

(SC S31885)
(Cases Consolidated)

703 P2d 954

Henry Kane argued the cause and filed a petition for Oregon State Homeowner's Association; Wally Priestley, Portland, argued the cause and filed a petition *pro se*; John DiLorenzo, Jr., Portland, argued the cause for League of Women Voters, Inc., and Chris Hudson. With him on the petition were Arno H. Denecke, Brendan Stocklin-Enright, and Moshofsky, DiLorenzo & Dietz, Portland.

Michael D. Reynolds, Assistant Attorney General, Salem, argued the cause for respondent. With him on the answering memoranda were Dave Frohnmayer, Attorney General, and James Mountain, Jr., Solicitor General, Salem.

LINDE, J.

## LINDE, J.

The Legislative Assembly devoted much of its 1985 session to proposals for adopting a retail sales tax so as to lessen reliance on real property and income taxes and to relieve the dependence of public education on local property tax levies. The result was a package in two parts. One part, House Joint Resolution 4, submits to the people for a single vote a set of constitutional amendments relating to state and local sales taxes and to the use of sales tax receipts and property taxes for local education. The second part, Oregon Laws 1985, chapter 95, is a statute enacting a retail sales tax which, by its terms, becomes effective only if HJR 4 is approved by the voters in a special election to be held on September 17, 1985. Or Laws 1985, ch 95 § 229; Or Laws 1985, ch 96.

The legislature could have provided its own title under which HJR 4 would be placed on the ballot. ORS 250.075(1). Because it did not do so, the task fell to the Attorney General. ORS 250.075(2). The present proceeding arises from the challenge of several persons to the Attorney General's ballot title for HJR 4 as being "insufficient, not concise or unfair." ORS 250.085(1).

The ballot title prepared by the Attorney General reads:

"ENACTS SALES TAX FUNDING SCHOOLS, COMMUNITY COLLEGES. LIMITS STATE SPENDING."

*"Question:* Shall Constitution permit maximum 5% sales tax, and impose sales tax funding schools, community colleges, with state spending limits?

*"Explanation:* Constitutional amendment allows and enacts maximum 5% sales tax. Exempts home consumed food, medical service, drugs, utilities, real estate transactions, animals, certain farm supplies. Legislature may add other exemptions (with voter approval after June, 1987). Bars local sales taxes. Tax partially funds schools, community colleges. Sets school, community college tax bases. Limits their tax levies, tax base increases, tax election dates. Requires renter, low income tax relief. Limits state spending increases. Makes other changes."

Petitions to review this ballot title were filed by the League of Women Voters and Chris Hudson (the League), by Oregon State Homeowner's Association (Homeowner's) and by Wally Priestley. Before oral argument, the Attorney General accepted some of the criticisms made by the League and submitted a proposed revision, which the League declares to be acceptable to it.[1] ORS 250.085(3) gives this court the duty to "certify to the Secretary of State a title for the measure which meets the requirements of ORS 250.035 * * *." That section states the following requirements:

"(1)  The ballot title of any measure to be initiated or referred shall consist of:

"(a)  A caption of not more than 10 words by which the measure is commonly referred to;

"(b)  A question of not more than 20 words which plainly states the purpose of the measure, and is phrased so that an affirmative response to the question corresponds to an affirmative vote on the measure; and

"(c)  A concise and impartial statement of not more than 75 words of the chief purpose of the measure.

"(2)  The ballot title shall not resemble, so far as probably to create confusion, any title previously filed for a measure to be submitted at that election."

Obviously it is difficult within the permitted number of words to summarize a measure that would place in the constitution numerous limitations on a particular form of taxation and on the use of the revenues therefrom, that would direct the legislature to enact other tax and spending limits,

---

[1] The Attorney General's proposed revised ballot title would read as follows:

"ENACTS SALES TAX FUNDING SCHOOLS, COMMUNITY COLLEGES. REDUCES CERTAIN TAXES."

"QUESTION:  Shall people enact maximum 5% sales tax reducing school, community college property taxes, income, timber tax reductions; constitutional limitations?

"EXPLANATION:  Constitutional amendment: Allows maximum 5% sales tax. Enacts legislation imposing 5% sales tax, reducing personal income and timber taxes. Exempts home consumed food, medical service, drugs, utilities, real estate transactions, animals, certain farm supplies. Requires renter, low income tax relief. Bars local sales taxes. Tax partially funds schools, community colleges. Changes school, community college tax bases; limits their tax levies, tax base increases, tax election dates. Limits state spending increases. Makes other changes."

that would revise existing constitutional provisions governing the manner of levying local property taxes for education, and approval of which would put into effect a detailed statutory scheme for a state retail sales tax. The several petitioners attack the Attorney General's ballot title from different directions. In essence, Homeowner's demands greater stress on the constitutional amendments made by HJR4 itself. The League and Priestley demand greater emphasis on the fiscal consequences of adopting the sales tax package. The League considers the Attorney General's original ballot title unfair on grounds that it makes the sales tax appear "simply as an additional tax" rather than as a "restructuring" of the state's tax system that would reduce other taxes. Priestley wants the title to make clearer that an affirmative vote would "impose" a sales tax rather than "permit" or "allow" one. Priestley also requests correction of the sentence in the Explanation that concerns the legislature's temporary power to add sales tax exemptions. Contrary to the League, he contends that the measure would raise as well as reduce property taxes.

The Attorney General has responded to each petitioner and, as already stated, has submitted the proposed revised ballot title set forth in note 1, above. His proposed changes would substitute the words "shall people enact" for the words "shall Constitution permit" in the Question and would refer to reductions in existing taxes in the Caption, the Question and the Explanation. In proposing these changes, the Attorney General moves toward placing more stress on the fiscal changes resulting from the enactment of the sales tax than on the legal changes made by HJR 4 itself.

As we have noted, it is difficult to explain the measure in the format provided for ballot titles. The reason is not merely its length or complexity. Rather, the difficulty arises from the way the package was constructed. The proposed sales tax is an ordinary statute, which the legislature could have enacted on its own. The critics are right that it takes no constitutional amendment to "permit" or "allow" a sales tax. The many constitutional amendments assembled in HJR 4, provisions limiting the rate and the coverage of any future sales tax, dedicating its receipts to local education districts, and changing existing provisions for these districts' property tax bases, were designed to make a sales tax politically acceptable in a state whose voters have rejected such a tax on

six prior occasions. The conventional wisdom counseled that without elaborate constitutional safeguards, a sales tax statute would certainly be referred by petition and defeated.

Some provisions of HJR 4 promise consumers that a future general sales tax will not exceed a rate of 5 percent nor include food, medicines, dwellings, or medical services without further vote of the electorate, and that no sales tax will be levied by local governments. A further exemption protects farmers. Some provisions are designed to assure that the funds raised by a sales tax will place public school finance on a more stable footing while reducing the demands of education on local property taxes. Another promises that the state will bear the retail merchants' costs in administering the sales tax. Without constitutional amendments, these assurances could not have been placed beyond future change by the Legislative Assembly or local governments. Thus, while the legislature chose to make its sales tax statute contingent on passage of HJR 4, that measure itself consists largely of new constitutional limitations on the powers of the state and local governments.

Most of the important aspects of the measure are found somewhere in the Attorney General's original ballot title or his proposed revision. The parties disagree how the information should be distributed among the 10-word Caption, the 20-word Question, and the 75-word Explanation.[2] Each must be independently sufficient. The League and Priestley emphasize the political perspective. They argue that the policy on which the voters will decide is whether or not to accept a general sales tax, and they are concerned about the nuances in which that policy choice is presented. Homeowner's petition, on the other hand, stresses that the Caption should show that the measure makes important legal changes in the constitution.

On this issue we agree with Homeowner's. It may well

---

[2] The relationship between these parts is affected by the fact that this ballot title is for a measure referred by the legislature. Most of the ballot titles reviewed by this court are prepared for initiative petitions, where the Explanation will be available for some months to people who are asked to collect signatures and, at least in theory, to people who are asked to sign them. ORS 250.045. But that is not the case when a measure is referred by the legislature. Where voting machines are used, only the Caption and the Question are printed on the ballot or ballot label; the Explanation is posted elsewhere in the voting compartment. ORS 254.175.

be that people care more about their taxes than about their constitutions; indeed, objections to unconstrained taxation have been perennial mainsprings of constitutionalism. The American colonists demanded "no taxation without representation," not representation in the abstract, and American constitutions still insist that revenue bills begin in the more popular house of their legislatures, whose members also face the most frequent elections. *See, e.g.,* Or Const, Art IV, § 18; U.S. Const, Art I, § 7. Finding room in the caption for the fact that HJR 4 consists of constitutional amendments reduces the words available for "balancing" its impact on the state's tax structure, as the League would prefer. Even so, we think that the Caption should draw attention to the constitutional character of HJR 4. Narrowly drawn formulas frozen into a constitution often remain to limit future policy choices long after serving their immediate purposes. We cannot assume that people are indifferent whether they are asked to approve an ordinary law or to amend their constitution; recently, for instance, an initiated death penalty law was passed by a 9 to 3 margin, while only a 6 to 5 majority approved an accompanying constitutional amendment.

## THE CAPTION

■        ORS 250.035(1)(a) prescribes that the Caption shall include words "by which the measure is commonly referred to." During legislative consideration of the present measure and of a 1984 predecessor, *see Hart v. Paulus,* 296 Or 352, 676 P2d 1384 (1984), the dominant policy issue was the adoption of a sales tax, and those words obviously must be prominent in the Caption. But this leaves room to explain the role of HJR 4 in confining and dedicating the use of this fiscal resource to local education. We said last year that "the caption should alert voters that they are being asked to amend their constitution when this can be done without sacrificing the substance of the proposed amendment." *Fithian-Barrett v. Paulus,* 296 Or 819, 822, 680 P2d 381 (1984).

Homeowner's proposed Caption would read: "Amends Oregon Constitution to Permit Sales Tax for Local Education." The proposed text fails to express that the measure would not merely permit a sales tax but put a sales tax into effect, and that it would limit the coverage and rate as well as the uses of the tax. We think a caption expressing these

elements would be: "Amends Constitution. Approves Limited 5% Sales Tax for Local Education."

## THE QUESTION

■     Similar issues are raised as to the Question. The Attorney General's original version asks "Shall Constitution permit maximum 5% sales tax, and impose sales tax funding schools, community colleges, with state spending limits?" Homeowner's proposes to specify that the amendments concern the "6 percent limitation and other constitutional provisions." The League wishes to emphasize the fiscal program of "restructuring" state taxes, reducing local school taxes and income taxes, and "constitutionally limiting government spending." The Attorney General's revised proposal, *supra* note 1, also would focus more on the enactment of the sales tax statute than on the provisions of HJR 4, asking: "Shall people enact maximum 5% sales tax reducing school, community college, property taxes; income, timber tax reductions; constitutional limitations?"

The Attorney General's original phrasing is incorrect; the Constitution as amended would not itself "impose" a sales tax. Petitioner Priestley's similar version of the Question has the same flaw. Also, contrary to the League's version, the Constitution as amended would not itself limit government spending. HJR 4 only states that the Legislative Assembly shall by law establish a limitation on the growth in state general operating expenditures, the rate to be measured by growth in personal income.[3] While there is no reason to doubt that the legislature would do so, the text proposed by the League is inaccurate.

We think that it is possible to construct an accurate Question, taking into account that an affirmative vote will approve the statutory tax as well as the constitutional limitations, from elements in the Attorney General's original and his revised text, as follows:

---

[3] For the effectiveness of placing affirmative lawmaking directives in a constitution, compare Article XI-D, section 3 of the Oregon Constituition, which in 1931 directed the legislature to develop water power in Oregon. Directives that the Legislative Assembly "shall" enact legislation are commonly used in the constitutional articles required to authorize state borrowing, *see* Or Const, Art XI to XI-J.

"QUESTION: Shall people amend Constitution, approve limited sales tax partially replacing property taxes for schools, community colleges, reducing income, timber taxes?"

## THE EXPLANATION

■　　The Attorney General's original Explanation inaccurately suggests that HJR 4 amends the Constitution to "allow" and "enact" a sales tax. Even a referendum directly on the sales tax statute would ask whether the people "approve" the law, Or Const, Art IV, § 1(3), the term we employ in this ballot title. Or Const, Art XVII, § 1. Otherwise the Attorney General's Explanation is largely accurate. Although it does not cover some provisions of HJR 4 that Homeowner's considers important, selection among provisions to be included is unavoidable. The Attorney General's revised version meets some of the points raised by the League, which accepts his version. Petitioner Priestley suggests a correction as to the period of time during which the legislature may add exemptions from the sales tax without voter approval, a provision which we think less important than certain others.

We think the Attorney General's Explanation will be accurate and fair when revised to read as follows:

"EXPLANATION: Approves sales tax law to fund schools, community colleges, reducing income, property, timber taxes. Amends Constitution to limit sales tax to 5%, exempts home consumed food, medical services, drugs, utilities, real estate transactions, animals, certain farm supplies. Prohibits local sales taxes. Directs legislation for administrative costs, tax relief for renters and low income individuals, limiting state spending increases. Provides school district tax bases, limits annual increases and school levy elections. Makes other changes."

Accordingly, we certify the following ballot title to the Secretary of State:

"AMENDS CONSTITUTION. APPROVES LIMITED 5% SALES TAX FOR LOCAL EDUCATION."

"QUESTION: Shall people amend Constitution, approve limited sales tax partially replacing property taxes for schools, community colleges, reducing income, timber taxes?

"EXPLANATION: Approves sales tax law to fund schools, community colleges, reducing income, property timber taxes. Amends Constitution to limit sales tax to 5%,

exempts home consumed foods, medical services, drugs, utilities, real estate transactions, animals, certain farm supplies. Prohibits local sales taxes. Directs legislation for administrative costs, tax relief for renters and low income individuals, limiting state spending increases. Provides school district tax bases, limits annual increases and school levy elections. Makes other changes."